UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>    v.<br>WILLIAM DANIEL BOONE,<br>    Defendant. | Criminal Action No. 16-117 (JDB) |

**MEMORANDUM OPINION & ORDER**

Before the Court is [53] defendant William Daniel Boone's motion to suppress all physical evidence seized during a June 29, 2016, search of a house at 2328 36th Street, Southeast, Washington D.C. ("the 36th Street house" or "the house"). Boone alleges that the affidavit submitted in support of the search warrant did not present sufficient facts to establish probable cause. He also contends that the affidavit included material misstatements that the affiant knew were false or made with reckless disregard for the truth, and he therefore requests a hearing under Franks v. Delaware, 438 U.S. 154 (1978). For the reasons explained below, the motion is denied.

**BACKGROUND**

On June 28, 2016, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) obtained a search warrant signed by Magistrate Judge Harvey of this court to search the 36th Street house. See Warrant [ECF No. 58-1]. In support of that warrant, ATF Special Agent Jeremy Horbert submitted an affidavit. See Aff. [ECF No. 58-1]. According to the affidavit, ATF, in conjunction with local law enforcement agencies, had been conducting a court-authorized wiretap on the cell phone of James Williams, an individual who the ATF believed was running a drug trafficking organization in Maryland. Id. ¶ 11, 13.

1

Law enforcement intercepted four phone calls with Williams (using the phone number ending 6081) in which he allegedly discussed drug transactions. Three of those phone calls were with a cell phone ending in the numbers 9212, which Horbert identified in the affidavit as belonging to Boone. Id. ¶ 15. The affidavit does not state how law enforcement connected that phone number to Boone.

The first phone call took place on May 26, 2016, between Williams and the 9212 cell phone at approximately 4:52 p.m. Id. Williams asked "put shit together for me?" and the man on the other end of the line responded, "shit I'm right here." Id. Horbert states that "based on [his] training and experience, and knowledge of this investigation" he believes that this conversation consisted of Williams asking the man on the other end of the line to assemble drug packages for him, and his interlocutor responded that the packages were ready for pick up. Id. ¶ 16.

The second call took place on May 31, 2016, at approximately 4:11 p.m., again between Williams and the 9212 cell phone. Id. ¶ 17. In that call, Williams states "shit just came through," and then in response to a question about his location, the man on the other end of the call says he is "in the house," and Williams responds that he will "swing through that motherfucker in a second." Id. Horbert attests that "based on [his] training and experience, and knowledge of this investigation" he believes that in this call, the man using the 9212 number stated that he was in the 36th Street house, and Williams responded that he would meet at the house soon to conduct a drug transaction. Id. ¶ 18.

Later that day, GPS location data from Williams' cell phone placed Williams in the "general area" of the 36th Street house. Id. ¶ 19. Law enforcement then conducted in-person surveillance of the 36th Street house and observed a "black Corvette bearing Virginia registration VMK-9291," which officers had identified as a car that Williams used based on previous

surveillance. Id. At approximately 5:06 p.m., law enforcement observed Williams exiting the 36th Street house "carrying a paper bag containing an object about the size of two packs of cigarettes." Id.

The third call occurred on June 7, 2016, once again between Williams and the 9212 cell phone, at approximately 1:33 p.m. Id. ¶ 20. In that call, the man using the 9212 number asks what Williams is doing, and Williams responds "shit on the rip." Id. Horbert believes that "the rip" refers to an "open air drug market" in Forestville, Maryland, and that this conversation indicated that Williams and his interlocutor were discussing selling narcotics at that location. Id. ¶ 21.

The final phone call occurred on June 12, 2016, at approximately 11:49 p.m., between Williams and unknown male using a phone number ending in 7836. Id. ¶ 22. In that call, the unknown male asks, "sup, got some dope?" and Williams responds "I only got one left and shit from Go-Go." Id. Horbert asserts that based on prior narcotics investigations, he knows that "Go-Go" is the street name for Boone, and "dope" is the street name for heroin. Id. ¶ 23. He therefore believes that in this phone call, the unknown male asked whether Williams had any heroin, and Williams responded that he only had one dose left, as well as some heroin from Boone. Id.

Based on this set of phone calls, the affidavit asserts that the house on 36th Street was a location where Williams and his associates stored and distributed "crack cocaine and firearms." Id. ¶ 14. Through a search of an open law enforcement database called "The Last One," Horbert asserts that the house is the primary residence for Boone. Id.

## LEGAL STANDARD

"Under United States v. Leon, suppression of evidence is usually not required when officers conduct a search in reasonable reliance on a search warrant issued by a detached and neutral magistrate." United States v. Cardoza, 713 F.3d 656, 658 (D.C. Cir. 2013) (citing United

3

States v. Leon, 468 U.S. 897, 913 (1984)). However, there are a handful of exceptions. As relevant here, law enforcement officers cannot in good faith "rely[] on a warrant based on an affidavit 'so lacking in probable cause as to render official belief in its existence entirely unreasonable.'" Leon, 468 U.S. at 923 (quoting Brown v. Illinois, 422 U.S. 590, 610–11 (1975) (Powell, J., concurring in part)). Whether the affidavit presents sufficient facts to support a finding of probable cause is "a practical common-sense decision whether, given all of the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); see also Cardoza, 713 F.3d at 659.

Additionally, "the Leon rule does not apply when the officer seeking the search warrant made false statements in the affidavit and did so either knowingly or with reckless disregard for the truth." Cardoza, 713 F.3d at 658 (citing Franks v. Delaware, 438 U.S. 154 (1978)). A defendant is entitled to a hearing into the credibility of the affidavit where he or she "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and that "the allegedly false statement [was] necessary to the finding of probable cause." Franks, 438 U.S. at 155–56; see also United States v. Maynard, 615 F.3d 544, 550 (D.C. Cir. 2010).

## ANALYSIS

### I. The Affidavit Supported a Finding of Probable Cause

The Court finds that the affidavit contained sufficient facts to support the magistrate's finding of probable cause and the officers' good-faith reliance on the warrant. Boone's primary argument is that the affidavit provides no reasons to connect him with the phone number ending in 9212 and therefore with the house on 36th street. But this misses the mark. Boone is correct that the affidavit provides scant evidence to connect him with the 9212 cell phone. But the warrant

4

was in no way connected to Boone; rather, it was to search the 36th Street house for evidence of Williams' crimes. And the affidavit provides sufficient probable cause for that.

Even if the Court assumes that the 9212 number is not connected to Boone, the four phone calls provide probable cause to believe that Williams was involved in drug trafficking, and the May 31 phone call and later in-person surveillance provides probable cause to believe that Williams picked up drugs from the 36th Street house. In the May 31 call, Williams states that "shit just came through," then the man using the 9212 number responded that he was "in the house," and Williams replied that he would "probably swing through" the house "in a second." Aff. ¶ 17. The affiant believes that in this phone call, Williams was arranging to pick up narcotics from the 36th street house. Id. ¶ 18. GPS data then placed Williams at the approximate location of the house. Id. ¶ 19. And officers conducting in-person surveillance then identified Williams' car at that location, and observed Williams leave the house with a small package, get into his car, and drive away. Id.

Given the evidence from the other three phone calls that Williams was involved in the drug trade, as well as the evidence from the May 31 phone call, GPS data, and in-person surveillance on that date, this is sufficient, "given all of the circumstances set forth in the affidavit," to demonstrate that "there is a fair probability that contraband or evidence of a crime" would be found at the 36th Street house. See Gates, 462 U.S. at 238. Whether or not there was sufficient evidence to connect Boone to the 9212 number is irrelevant to whether the affidavit provided probable cause for a search warrant for the house.

## II. Boone is Not Entitled to a Franks Hearing

Boone alleges that Officer Horbert made false statements when he attested that the phone calls were made between Williams' cell phone and the cell phone ending in the numbers 9212.

5

See Def.'s Mot. to Suppress at 5–8. Boone proffers the records for the 9212 phone as evidence that it was not in use during the three calls that the affidavit identifies. See Phone Records [ECF No. 53-2] at 17–24 (May 26), 32–33 (May 31), 45–48 (June 7), 56–59 (June 12).

But as the government explains, those phone records show no such thing—in fact, quite the opposite. The phone records appear to show that the 9212 phone did not make any calls at the specified times because the records are timestamped in UTC, also known as "Coordinated Universal Time," or colloquially, Greenwich Mean Time. At the top of each page, the phone records state: "AT&T's records are stored and provided in UTC." See id. When the timestamps are converted into Eastern Daylight Time (which is four hours behind UTC), they in fact confirm that calls were made to or from the 9212 phone at the times identified in the affidavit. For example, on page 33, items 503 and 504 confirm that two thirty-second phone calls took place at 20:11 UTC, which is 4:11 p.m. Eastern Daylight Time. Compare Phone Records at 33 with Aff. ¶ 17. Hence, Boone has not offered any evidence that the statements made in the affidavit were false, much less that the affiant made them knowing that they were false or with reckless disregard for their truth. Boone is thus not entitled to a Franks hearing.

## **CONCLUSION**

Upon consideration of [53] Boone's motion to suppress and request for a Franks hearing, it is hereby **ORDERED** that the motion is **DENIED**. In light of the trial scheduled for the week of September 18, 2017, it is further **ORDERED** that the following schedule shall govern further proceedings:

1. A pre-trial conference is scheduled for 2:30 p.m. on Tuesday, September 5, 2017 in Courtroom 30A.

2. Defendant's response to [49] the government's 404(b) motion, if any, shall be filed by not later than August 21, 2017;

3. Any motions in limine shall be filed by not later than August 29, 2017;

4. Any responses to motions in limine shall be filed by not later than 12:00 p.m. on Tuesday, September 5, 2017; and

5. Proposed jury instructions shall be filed by not later than September 7, 2017.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: August 14, 2017